IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor, | ) ) ) | CIVIL CASE NO. 5:15-cv-01577 |
| Plaintiff, | ) ) ) | JUDGE BENITA Y. PEARSON |
| -vs- | ) ) ) ) | **BRIEF IN SUPPORT OF DEFENDANTS' PETITION FOR COSTS AND ATTORNEY** |
| CATHEDRAL BUFFET, INC., and ERNEST ANGLEY, | ) ) ) | **FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT** |
| Defendants. | ) | |

## I. SUMMARY OF PROCEEDINGS

### A. The Circuit Court Opinion.

On April 16, 2018 a unanimous panel of the Sixth Circuit Court of Appeals reversed and remanded an earlier decision of this Court determining that volunteers at the Cathedral Buffet were employees under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (the "FLSA"). The majority decision, relying on established SCOTUS authority – namely *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S.290, 302 (1985) and *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947) – held that "to be considered an employee within the meaning of the FLSA, a worker must first expect to receive compensation."

The majority opinion remarked that the SCOTUS has ***plainly*** said, not once, but twice, that promise or expectation of compensation is a threshold inquiry that must be satisfied before a court assesses the economic realities of the working relationship: "*Portland Terminal* and *Alamo **plainly require*** us to first ask whether Cathedral Buffet's volunteers worked in "expectation of compensation." Opinion at p.7 (Emphasis added.)

The Sixth Circuit Court of Appeals also quickly disposed of the DOL's companion argument that the spiritual coercion that it alleged to have occurred could act as a stand-in for the economic relationship that the FLSA requires. Opinion at p. 9.

In a concurring opinion, Judge Kethledge openly questioned whether the DOL "simply failed to think through its position in this case." Opinion at p. 11.  The concurring opinion helps to demonstrate that even if the DOL had statutory support for advancing its spiritual coercion theory of employment (it didn't) its application in this case would so clearly violate the First Amendment's Free Exercise of Religion Clause as to render its advancement unreasonable. Opinion at pp. 11-13.

### B. The Trial Court Proceedings.

Not only was the DOL's case plainly at odds with established SCOTUS precedent, as the unanimous majority opinion determined – the DOL tried the case in a patently unfair and unreasonable manner. The DOL commenced its action without any meaningful investigation of the volunteers' motivations for volunteering.   In his testimony, DOL lead investigator Stephen Banig admitted that he interviewed only 14 persons before the DOL brought the enforcement action on behalf of over 230 volunteers.  ECF Doc #: 76, PageID ##: 1937-1941.  At the time of filing its enforcement action, the DOL did not plead any theory of spiritual coercion. ECF Doc. #: 1.  Banig testified at trial that he, in fact, did not ask any questions of the 14 witnesses that he interviewed regarding "pressure or coercion" to volunteer before the Department of Labor filed its complaint.  ECF Doc #: 76, PageID ##: 1937-1941.

Banig began to contact and interview witnesses regarding the alleged coercion much later at the suggestion of the DOL Solicitor in an effort to support a "coercion" argument for trial. ECF Doc #: 76, PageID ##: 1938-39.

The DOL sought to mount its theory of "spiritual coercion" even while it was receiving sworn volunteer affidavits (ultimately totaling 134 in number) *from the same persons it claims were spiritually coerced!* Those 134 volunteer affiants testified that they volunteered for their own "personal purpose, pleasure and satisfaction" and *not* "due to any pressure, threat or coercion of any type." Defendants' Trial Ex. 3.  The DOL never offered to amend its complaint to adjust for the 134 affiants, or to reduce its demand for Defendants to pay all the back wages and liquidated damages calculated for the more than 230 volunteers based on this evidence.  More to the point, the DOL did not attempt to contact the affiants with respect to their affidavit testimony to determine whether the DOL, in good faith, could continue to make its assertion in the litigation of "spiritual coercion" with respect to each such affiant.   The DOL sought only to find volunteers at the last minute who would testify *in support of its theory* of "spiritual coercion." ECF Doc #: 76, PageID ##: 1938-40, 1948-49, 1957-1959.  Ultimately, it located less than a handful of former church members to do so.

Instead of further investigating its litigation claim that the 134 volunteer affiants were coerced or pressured into volunteering after receiving the volunteers' sworn statements that they were not, the DOL chose to turn a blind eye to the testimony and doubled down on its unfounded litigation position that these same people volunteered *because they were coerced*.

The DOL presented four volunteer witnesses in its case.   Each of those four volunteer witnesses testified to his or her own thoughts and experiences (many of which occurred while the

3

witness served as *paid staff members* of the Buffet) in an attempt to demonstrate a *state of mind* that would have to be *extrapolated and assumed for all the more than 230 volunteers specified in the DOL's complaint*.  In short, the DOL presented a case that was, at best, rank speculation regarding the nearly 100 volunteers set forth in the DOL's complaint that did not testify at trial and recklessly ignored the sworn testimony of over 134 volunteers it purported to represent in its enforcement action.  Even Investigator Banig (who served as the DOL's trial representative and was present for all the trial testimony), could not buy what the DOL was selling with its "coercion" argument.  ECF Doc #: 76, PageID #: 1941.

In addition to proceeding on its precarious legal theory, while providing its meager factual showing, and recklessly ignoring the sworn testimony of 134 volunteer affiants, the DOL failed to present any supporting expert testimony despite published Sixth Circuit authority demonstrating that such expert testimony would have been required to demonstrate psychological coercion *even with respect the four DOL witness/volunteers who did testify to their own experiences, feelings and impressions at trial*.   See *United States v. Kozminski*, 821 F.2d 1186, 1198 (6th Cir. 1987)(J. Kennedy, concurring)(recognizing that psychological coercion must be proven by expert testimony).

What is more, with respect to the 134 volunteer affidavits ultimately entered into evidence, the DOL's counsel played a game of "opossum" with defense counsel and the Court.  When the Court balked at the defendants' pretrial representation that they would likely call a majority of the volunteers in their case at trial, the Court recommended that the Defendants produce affidavits in lieu of live testimony and the DOL's counsel indicated no disagreement at the same pretrial conference.  ECF Doc. #75, Tr. Vol. I, PageID#: 1558.   Months later, and just

prior to trial, however, the DOL filed an "objection" with the Court to the Defendants' exhibit list, seeking to exclude the 134 volunteer affidavits. ECF Doc. #: 67; ECF Doc. #:75, Tr. Vol. I, PageID##: 1558-1574.

The DOL's counsel also misidentified Rebecca Roadman as a "confidential informant" to the prejudice of the defense with no legal justification for doing so, despite the fact that the DOL's counsel represented to the Court that Ms. Roadman's testimony was critical to the DOL's case. ECF Doc. #: 72; ECF Doc #: 75, PageID #: 1577. Even prior to that, the DOL invoked the informant's privilege without the required formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. *United States v. Reynolds*: 345 U.S. 1, 7–8, (1953). It was only in response to a motion to compel filed by the Defendants that the DOL first provided an undated declaration from Wage and Hour Administrator David Weil in Support of Secretary's Formal Claim of Privilege.

If that were not enough, during discovery the DOL answered requests for admission by admitting that "[t]he Secretary admits that the individuals classified as 'volunteers' did so of their own volition." Def. Trial Ex. 1. Nearly ten months later, less than a month prior to trial, and without ever properly asking for leave from the Court under Fed.R. Civ. 36(b), the DOL attorneys informed the Defendants that they were withdrawing their answer to a request for admission. The DOL thereby changed its theory of employment classification and went "all in" on its spiritual coercion theory, requiring it to discount 134 sworn volunteer affidavits who said they were not coerced and to engage in rank speculation that another 100 volunteers had been coerced.

### C. The DOL's Unwavering Demand Related to Church Member Volunteers

With respect to the over 230 volunteers named in the DOL's complaint, the DOL initially demanded the full amount of back wages and liquidated damages for each volunteer (ultimately calculated at over $388,000). It rejected an offer by the Defendants to pay the full amount of back wages for the volunteers (but not the liquidated damages penalty), and never reduced its demand for these individuals throughout the litigation. See Exhibit "E" Affidavit of William G. Chris. As it stands now after appeal, the DOL is entitled to receive nothing on its claims alleging FLSA violations in relation to the volunteers, demonstrating an unreasonable disparity between the amount demanded by the DOL and the judgment it obtained.

## II. LAW AND ARGUMENT

### A. THE DEFENDANTS SHOULD BE AWARDED THEIR COSTS.

28 U.S.C. § 2412 (a)(1) allows the Court to award costs to a prevailing party who defends an action brought against it by an agency or official of the United States government.

This provision does not turn on whether the government entity's litigation was substantially justified. A Bill of Costs separated to reflect both the District Court, the Sixth Circuit, and in preparing this Petition Proceedings is attached as Exhibits "C" and "E-5" to the Petition and should be paid to Defendants pursuant to the EAJA.

### B. THE DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEY FEES AND EXPENSES IN DEFENDING AGAINST THE DOL'S COMPLAINT AND FOR ITS SUCCESSFUL APPEAL.

The purpose of the EAJA is described in its legislative history:

> The [EAJA] rests on the premise that certain individuals ... may be deterred from seeking review of ... unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity

> between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified.

H.R.Rep. No. 96–1418, at 5–6 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4984.

28 U.S.C. § 2412(d)(1)(D) mandates that "[i]f, in a civil action brought by the United States . . . . the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, ***the court shall award*** to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust. . . " (Emphasis added.)  This provision is mandatory and requires an award of fees and expenses regardless of whether the government was "substantially justified in bringing action." *United States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 906 (9th Cir. 2001), *as amended* (June 21, 2001).

As discussed above, the DOL initially demanded the full amount of back wages and liquidated damages for all of the over 230 church-member volunteers (awarded by the Court in excess of $388,000), rejected an offer in the amount of full back wages for the church-member volunteers without liquidated damages, and never reduced its demand related to the church-member volunteers at any point thereafter.  Ultimately, it recovered ***no award whatsoever*** related to such church-member volunteers.  As discussed below, Defendants have committed no willful violation of law, have not acted in bad faith, and no special circumstances make the award

7

unjust. This statutory provision alone requires the Court to award the Defendants their fees and expenses in defending against the DOL's enforcement action.

As separate and independent grounds for an award, 28 U.S.C. § 2412(d)(1)(A) provides that a prevailing party is entitled to attorney fees and expenses when it successfully defends against an action brought against it by a government agency where the agency's position is not substantially justified.

As the SCOTUS has noted, the EAJA reduces to four requirements: (1) that the fee applicant be a prevailing party; (2) that the government's position not be substantially justified; (3) that no special circumstances make an award unjust; and (4) that the fee applicant file the requisite application within thirty days of final judgment. *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990). Once a claimant achieves "prevailing party" status, the government can defeat a fee award under EAJA only by demonstrating that its position was substantially justified or that special circumstances make an award unjust; if the government can make neither showing, an award of fees to a prevailing party is mandatory. *Rivera-Quintana v. Commissioner of Social Sec*, 692 F.Supp.2d 223 (D.Puerto Rico 2010). By providing that a court "shall award" attorney fees unless certain exceptions apply, the EAJA makes mandatory the award of attorney fees to a qualified prevailing party. *Corona v. Barnhart*, 431 F.Supp.2d 506 (E.D.Pa.2006).

"The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a 'prevailing party,' ... operates as a one-time threshold for fee eligibility." *Jean,* 496 U.S. at 160. "While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." *Id*. at 161–62. Thus, a fee applicant must

8

meet the EAJA's four requirements only once to establish an entitlement to attorney fees and expenses. The EAJA is intended "to cover the cost of all phases of successful civil litigation addressed by the statute." *Jean*, 496 U.S. at 166.

A court may deny attorney's fees and expenses if "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government bears the burden of establishing such "special circumstances." *U.S. v. Jones*, 125 F.3d 1418, 1425 (11th Cir.1985). While special circumstances include the government advancing a good faith novel but credible extension or interpretation of the law, this is narrowly construed so as not to defeat Congress' purpose in enacting EAJA. *Martin v. Heckler*, 773 F.2d 1145, 1149 (11th Cir.1985)(overruled on other grounds)

### 1. The Defendants qualify as prevailing parties under the EAJA.

To gain prevailing-party status, a party must secure an enforceable judgment on the merits or court-ordered consent decree that "create[s] the material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees. " *Marshall v. Comm'r of Soc. Sec.*, 444 F.3d 837, 840 (6th Cir.2006). "[T]he petitioner's success in obtaining the desired relief from the federal court is critical to establishing prevailing party status under *Buckhannon*, regardless of whether the federal court's order addressed the merits of the underlying case." *Id*.

Here, the Sixth Circuit Court of Appeals has ruled on the merits and determined that the Cathedral Buffet volunteers are not properly classified as FLSA employees. The Sixth Circuit's unanimous decision was based on application of law to the facts of the case, not on any procedural issue. The Defendants are prevailing parties.

### 2. The DOL's position taken in litigation was not substantially justified and there are no special circumstances that would make an award unjust.

As the SCOTUS stated in *Scarborough v. Principi*, "the required 'not substantially justified' allegation imposes no burden of proof on the fee applicant. It is, as its text conveys, nothing more than an allegation or pleading requirement." 541 U.S. 401, 414 (2004). "The burden of establishing 'that the position of the United States was 'substantially justified,' § 2412(d)(1)(A) indicates and courts have uniformly recognized, must be shouldered by the Government." *Scarborough*, 541 U.S. at 415. "'Substantial justification' in this context means 'justification to a degree that could satisfy a reasonable person,' *Pierce*, 487 U.S. at 565." Under the EAJA, substantial justification means the government's position was "justified in substance or in the main." *Id.* at 565. In other words, the Court must determine whether the government's position was justified in ***law <u>and</u> in fact to a degree that would satisfy a reasonable person***. *Id*

"The government's position is not substantially justified simply because … precedents have not squarely foreclosed the position." *Decker*, 856 F.3d at 664. It is a "decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Id.* (internal quotation marks and citation omitted). Likewise, a government agency's position is not substantially justified where it is contrary to the established law of the jurisdiction. See, *e.g., Ayers v. Astrue*, No. 1:10CV30, 2011 WL 5506096, at *3 (S.D. Ohio Oct. 18, 2011), report and recommendation adopted sub nom. *Ayers v. Comm'r of Soc. Sec.*, No. 1:10-CV-30, 2011 WL 5445927 (S.D. Ohio Nov. 10, 2011); *Fraction v. Bowen*, 859 F.2d 574, 575 (8th Cir.1988) (claimant entitled to EAJA fees where government acted "contrary to clearly established circuit precedent"); *Williams v. Sullivan*, 775 F.Supp. 615, 618–19 (S.D.N.Y.1991) (government's position was not substantially justified given established Second Circuit law). The fact that this Court initially found merit in the Secretary's case does not mean that it was substantially justified. Compare *United States ex rel. Wall v.*

10

*Circle C Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017)(J. Kethledge)("The district court, as noted above, held that the government's theory was reasonable simply because the court itself had twice accepted the theory. But 'the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified.'")

The United States Court of Appeals for the Federal Circuit in *Gavette v. Office of Personnel Management*, 808 F.2d 1456, stated that, "substantial justification is to be decided case-by-case on the basis of the record," and held that "'substantial justification' requires that the Government show that it was ***clearly*** reasonable in asserting its position . . ." *Id*. at 1467. (emphasis in original). A showing of unsubstantial justification may be based on the government's decision to file and/or maintain the lawsuit or by demonstrating "an abuse of the judicial process in the method of prosecution." *S.E.C. v. Cuban*, 2009 WL 4544178, *2 (N.D.Tex. Dec. 4, 2009) (citing *Batson v. Neal Spelce Assocs., Inc*., 805 F.2d 546, 550 (5th Cir.1986)).

As described above and in the Sixth Circuit's majority and concurring opinions, the DOL advocated a legal position that was "plainly" inconsistent with established SCOTUS precedent and, at best, not properly thought through: even if the FLSA, as interpreted, did not foreclose an argument that the "spiritual coercion" alleged created a FLSA employment relationship, established principles of Constitutional law plainly demonstrated that advancing such a theory would violate the First Amendment's Free Exercise of Religion Clause.

Additionally, the DOL changed its theory of the case shortly before trial, improperly withdrew its answer to a request for admission without moving the Court to do so under the Federal Rules of Civil Procedure, and ignored the sworn testimony of the 134 volunteer affiants

11

that it purported to represent in the enforcement action who gave sworn testimony that they did ***not*** volunteer because of pressure or coercion.  The DOL continued to present exactly the opposite position to the Court, without further investigation of its theory by interviewing the volunteer affiants to determine if it had a good faith factual basis to continue to present its "spiritual coercion" theory in the face of the sworn testimony.  Compare *e.g.*, *Norelus v. Denny's, Inc*., 628 F.3d 1270, 1282–83 (11th Cir. 2010)(imposing sanctions under 28 U.S.C. § 1927 where attorneys "blinded themselves to as much of the contradictory evidence" and "stubbornly ignor[ed]" the truth after it was "thrust in their faces").

The DOL advanced its case regarding the nearly 100 volunteers who did not testify with rank speculation that they volunteered because of pressure or coercion, and failed to present the required expert testimony to support the claim that the four volunteer witnesses that it presented were victims of psychological coercion. Compare, e.g., *Ellis v. Beemiller, Inc*., 287 F.R.D. 326, 346 (W.D. Pa. 2012)(imposing Rule 11 sanctions against attorney and citing Fed.R.Civ.P. 11, Advisory Committee Notes to 1993 Amendment for the proposition that "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.")

The DOL presented a case that did not have a reasonable basis in law, pursued a theory of "spiritual coercion" that did not have a reasonable grounding in fact, ignored the sworn testimony of those it purported to represent, and employed unfair litigation tactics along the way.  This is exactly the kind of government overreach and abuse that the EAJA was designed to remedy.  Compare *Gate Guard Servs. L.P. v. Perez*, 14 F. Supp. 3d 825, 828 (S.D. Tex. 2014) (DOL ordered to pay $565,527.61 in attorney fees, costs and expenses based on the DOL's

failure to properly investigate its claims, misuse of the informant's privilege, and disregard of the facts available to it.)

Clearly, the DOL was not "substantially justified" in pursuing its "spiritual coercion" theory when 134 volunteer affiants testified that they were not coerced or pressured without at least following-up with those individuals, just as it was not substantially justified in presenting rank speculation that another 100 volunteers volunteered because of pressure or coercion without any individualized evidence from those individuals or even about them.

The total amount of back wages and liquidated damages for the four volunteer witnesses who the DOL had testify at trial concerning their own personal feelings of pressure or coercion (which was still insufficient as a matter of law without supporting expert testimony) equaled just over $5,000.  See DOL Trial Ex. 10.  Yet, the DOL unreasonably advanced its claim for $388,507.90 centered on its theory of "spiritual coercion" which was not substantially justified in fact or in law.

No special circumstance exist that would make an award unjust.   The Defendants have engaged in good faith in the litigation and principles of equity and the purpose of the EAJA support the award.  Moreover, as explained in Judge Kethledge's concurring opinion, even if the Court were to determine that DOL's "spiritual coercion" argument had an arguable good faith basis in the statute, its application in this case would clearly violate the First Amendment. Further, even if the application of the DOL's spiritual coercion theory would not violate the First Amendment, the DOL presented no individualized testimony to support the state of mind condition (coercion) it alleged with respect to the great majority of volunteers named in its

enforcement action and pursued the theory in stark contradiction to the sworn testimony of 134 affiants as to their own state of mind.

### 3. The Defendants' Petition under the EAJA is Timely.

A panel of this Sixth Circuit appears to have treated the date of the issuance of the appellate opinion that foreclosed the District Court from ruling in favor of the non-prevailing party on remand as the date from which the thirty-day clock for filing a petition under the EAJA begins to run. *Allen v. Secretary of Health and Human Services*, 781 F.2d 92, 94 (6th Cir. 1986). Although the Defendants question whether *Allen* continues to be good law in this appellate jurisdiction, no chances are being taken with respect to timeliness and this petition is being filed within thirty (30) days of the Sixth Circuit's April 16, 2018 opinion in this case, despite the fact that at the date of filing this Petition no mandate has yet issued from the Sixth Circuit Court of Appeals and the time for filing a petition for certiorari to the United States Supreme Court has yet to run.

### 4. An Award in Excess of $125 Per Hour for the Work Performed is Proper.

In requesting an increase in the hourly-fee rate, the EAJA fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 898 (providing that the amount of EAJA fees "shall be based upon prevailing market rates for the kind and quality of the services furnished"); *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009). The Defendants provide supporting affidavits and a published Ohio State Bar Association study with a breakdown of average hourly rates of attorneys across Ohio and by

practice area.  The information supports the requested rate of $225 per hour and full payment of the $15,000 flat fee paid on appeal.  Compare *Steele v. Comm'r of Soc. Sec.*, 989 F. Supp. 2d 686, 689 (S.D. Ohio 2013).

Even if the fee adjustment to $225 per hour were not supported by the Defendants (it is), an increased cost of living fee adjustment would itself bring the appropriate rate to $201.14 per hour as calculated pursuant to the formula set forth in *Sorenson v. Mink*, 239 F.3d 1140, 1148 (9th Cir. 2001) and discussed in *Steele, supra*.

## III.  CONCLUSION

Based on the foregoing, the Defendants are entitled to an award of costs, fees and expenses totaling $197,638.19 pursuant to the EAJA.

Respectfully submitted,

**RODERICK LINTON BELFANCE, LLP**

/s/William G. Chris

---

William G. Chris (0006593)
Lawrence R. Bach (0021205)
Todd A. Mazzola (0062160)
50 S. Main Street, 10th Floor, Akron, Ohio 44308
Telephone:  (330) 434-3000; Fax:  (330) 434-9220
Email:  wchris@rlbllp.com
          lbach@rlbllp.com
          tmazzola@rlbllp.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF TRACKING AND PAGE LIMITATION

The undersigned counsel hereby certifies that this matter is assigned to the Standard Track. Counsel further certifies that Defendants, BRIEF IN SUPPORT OF DEFENDANTS' PETITION FOR COSTS AND ATTORNEY FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT, exclusive of the required certifications, adheres to the fifteen (15) page limitation pursuant to Local Rule 7.2 of the Northern District of Ohio.

/s/William G. Chris

William G. Chris (0006593)

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2018 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/William G. Chris

William G. Chris (0006593)